**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and CHARLES A. WHOBREY, as Trustee, | ) | Case No. 26-cv-12953 |
| *Plaintiffs*, | ) | |
| v. | ) | District Judge |
| ESBER BEVERAGE COMPANY, an Ohio corporation, | ) | Magistrate Judge |
| *Defendant*. | ) | |

**COMPLAINT**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Charles A. Whobrey, one of its present trustees, allege as follows:

**JURISDICTION AND VENUE**

1. This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., and is a suit to recover employer contributions owed to the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") by the Defendant Esber Beverage Company ("Esber") in accordance with applicable collective bargaining and trust agreements and to remedy the Defendant's failure to comply with the Pension Fund's demand for an audit.

2. This Court has jurisdiction over this action under 29 U.S.C. § 1132(e)(1).

3. Venue lies in this Court under 29 U.S.C. § 1132(e)(2), in that the Pension Fund is an "employee benefit plan" as that term is defined in ERISA, 29 U.S.C. § 1002(3), and is administered at its principal and exclusive place of business in Chicago, Illinois.

Venue is also proper in this Court pursuant to the forum selection clause contained in the Pension Fund's Trust Agreement (the "Trust Agreement") which designates this District as the appropriate forum for lawsuits to enforce a demand for an audit and to collect unpaid contributions.

## PARTIES

4. The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

5. Plaintiff Charles A. Whobrey is a present trustee and "fiduciary" of the Pension Fund within the meaning of 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Pension Fund within the meaning of 29 U.S.C. § 1301(a)(10).

6. Pursuant to 29 U.S.C. § 1132(a)(3), Charles A. Whobrey, Trustee, is authorized to bring this action on behalf of the Pension Fund and its participants and beneficiaries in his capacity as a fiduciary and trustee.

7. Defendant Esber is a corporation organized under the laws of the State of Ohio and is an "employer" and a "party-in-interest" as those terms are defined by 29 U.S.C. §§ 1002(5) and 1002(14)(C).

## BACKGROUND

8. Local Union No. 92 of the IBT (the "Local Union") is a labor organization which represents, for the purpose of collective bargaining, certain employees of Esber and employees of other employers in industries affecting interstate commerce.

9. During all relevant times (including during May 1, 2014 to present), Esber and the Local Union have been parties to collective bargaining agreements (the "CBAs") pursuant to which Esber has been required to make contributions to the Pension Fund on behalf of certain of its covered employees.

10. Esber agreed to be bound by the terms of the Trust Agreement and all rules and regulations promulgated by the Pension Fund's Trustees under that Trust Agreement.

11. The Pension Fund relies upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and to identify the weeks worked by the covered employees. Based upon the employee work history reported by the employers, the Pension Fund bills the employers for contributions.

12. Under Article III, Section 1 of the Trust Agreement, Esber was required to "remit continuing and prompt contributions to the [Pension Fund] as required by the applicable collective bargaining agreement, participation agreement, this [Trust] Agreement and/or any other written agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the [Pension] Fund . . . ."

13. Article XIV, Section 4 of the Trust Agreement provides:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due Employer Contributions (other than withdrawal liability) prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater). ... Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for Employer Contributions (other than withdrawal liability) shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually. . . .

14. The Trust Agreement also permits the Pension Fund to audit the records of participating employers to verify the accuracy and completeness of employee work history reported by the employers. Specifically, Article III, Section 5 of the Trust Agreement provides as follows:

> **Production of Records.** Each Employer shall promptly furnish to the Trustees, upon reasonable demand, with access to the documents that are necessary to determine whether the Employer is in compliance with all of its obligations under this Agreement and any rules of the Fund as well as any Participation Agreement, Collective Bargaining Agreement or other Agreement relating to participation in the Fund. The records the Employer shall provide include, without limitation, payroll records (including the names and last known addresses of its Employees, their Social Security

numbers, the hours worked by each Employee and past industry employment history in its files), information relating to vendors (including vendor invoices and the Employer's cash disbursement journal) and such other information as the Trustees may reasonably require in connection with the administration of the [Pension Fund].

15. Article III, Section 6 of the Trust Agreement provides as follows:

[T]he Employer shall be liable for any attorneys' fees and costs in any litigation or arbitration filed by the Fund . . . in which the Fund prevails, including . . . suits or arbitrations relating to delinquent contribution payments. . . [and] audit demands[.]

18. Article XIV, Section 12 of the Trust Agreement provides as follows:

An Employer shall be required to pay audit fees and audit costs if litigation is required to obtain access to any records that are requested in connection with an audit and/or if litigation is required to collect additional billings that result from the audit. Audit fees will be calculated at the market rate for the metropolitan Chicago area.

**STATUTORY AUTHORITY**

19. 29 U.S.C. § 1145 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

20. 29 U.S.C. § 1132(g)(1) provides:

In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

21. 29 U.S.C. § 1132(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan --

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of--

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

**COUNT I -**
**REFUSAL TO COMPLY WITH**
**THE PENSION FUND'S DEMAND FOR AN AUDIT**

22. Plaintiffs hereby reallege and incorporate the allegations made in paragraphs 1 through 21 of this Complaint as though fully set forth herein.

23. By letter dated February 28, 2024, the Pension Fund informed Esber of the Pension Fund's request to perform an audit of Esber for the period of December 27, 2020 through December 30, 2023 (the "2021-2023 Period"). The letter stated that the purposes of the audit included identifying all eligible plan participants, verifying that contributions were properly reported for the 2021-2023 Period, and verifying compliance with the Trust Agreement and the Pension Fund's rules. This includes the Pension Fund's rules against adverse selection, which (among other things) prohibit Esber from assigning to outside vendors work that is covered by the CBAs.

24. Esber has produced some of the records requested for the 2021-2023 Period, but Esber has failed to produce certain documents requested. Specifically, these unproduced documents include: (1) Esber's cash disbursement journals for the 2021-

2023 Period, including details of all cash, check, debit, credit, and any other payments made to each vendor compensated for this period; and (2) for all Esber employees who were not reported to the Pension Fund for the 2021-2023 Period, documentation indicating the type of work performed by each such employee.

25. Since February 28, 2024, the Pension Fund has repeatedly asked Esber to produce the records referenced in the prior paragraph. However, to date, Esber has refused to produce those records.

26. By letter dated July 17, 2026, the Pension Fund notified Esber that the Pension Fund was expanding its audit to include the periods of May 1, 2014 through December 26, 2020 (the "May 2014-December 2020 Period") and December 31, 2023 through December 27, 2025 (the "2024-2025 Period").

27. In its July 17, 2026 letter, the Pension Fund also reiterated its request for the unproduced documents relating to the 2021-2023 Period (*i.e*., the documents referred to in paragraph 24 above).

28. In its July 17, 2026, letter, the Pension Fund also requested additional documents relating to the expanded audit periods (*i.e*., the May 2014-December 2020 Period and the 2024-2025 Period). These documents included (for those entire periods): (1) Esber's payroll ledgers/registers; (2) individual earnings histories for Esber's employees; (3) IRS Forms W-2 and W-3; (4) IRS Forms 941 and 941C; (5) cash disbursement journals; (6) OSHA Occupational Injuries and Illnesses reports; and (7) personnel files and/or other documentation sufficient to show Esber's employees' job classifications, dates of hire and dates of termination.

29. In the July 17, 2026, letter, the Pension Fund gave Esber until August 17, 2026 to produce the documents identified in paragraphs 27 through 28 above.

30. August 17, 2026 came and went without Esber producing any of those documents.

31. Subsequently, the Pension Fund met with representatives of Esber on September 17, 2026. During this meeting, Esber agreed to produce all outstanding documents for the 2021-2023 Period and 2024-2025 Period by October 8, 2026. Central States and Esber also agreed to extend Esber's deadline to produce the documents requested for the preceding May 2014-December 2020 Period to a date to be agreed upon later, but this extension was conditioned on Esber identifying (by October 8, 2026) all requested documents for the May 2014-December 2020 Period that it possesses.

32. October 8, 2026 has come and gone, and Esber has still not produced any additional documents and has still not provided the Pension Fund any information regarding the documents it possesses.

33. By not producing the records identified in paragraphs 27 through 28 above, Esber has breached the Trust Agreement by failing to furnish to the Pension Fund, after reasonable demand, the documents, all of which are necessary to determine whether Esber has complied with its obligations to the Pension Fund.

34. Under the Trust Agreement, an employer is required to pay all audit fees and costs if litigation is required to obtain access to any records that are requested in connection with an audit.

**WHEREFORE,** Plaintiffs request the following relief:

(a) An order requiring Esber to comply with the terms of the CBAs, the Trust Agreement, and ERISA, and directing Esber to comply with the audit for the period of May 1, 2014 to December 27, 2025 by providing representatives of Plaintiffs with any and all information and documents requested as part of the audit;

(b) A judgment against Esber and in favor of Plaintiffs, consisting of a monetary award in the amount of (i) all audit fees and costs incurred by the Pension Fund in performing the audit, plus (ii) all attorneys' fees and costs incurred by Plaintiffs in connection with this action; and

(c) Such further or different relief as this Court may deem proper and just.

**COUNT II -**
**<u>DELINQUENT CONTRIBUTIONS</u>**

35. Plaintiffs hereby reallege and incorporate the allegations made in paragraphs 1 through 34 of this Complaint as though fully set forth therein.

36. The records produced by Esber for the 2021-2023 Period revealed that Esber failed to accurately and completely report employee work history for that period.

37. Based on information and belief (specifically, that Esber failed to accurately and completely report its work history for the 2021-2023 Period and that Esber did not produce the documents requested as part of the expanded audit), Esber has also failed to accurately and completely report employee work history for the May 2014-December 2020 Period and the 2024-2025 Period.

38. Esber breached the provisions of ERISA, the CBAs, and the Trust Agreement by failing to pay contributions and interest owed to the Pension Fund.

39. As a result of the conduct alleged in paragraph 38, Esber owes the Pension Fund at least $137,937.40 in unpaid contributions (not including interest) for the 2021-2023 Period.

40. As a result of the conduct alleged in paragraph 38, Esber also owes the Pension Fund additional amounts that are currently unknown with specificity for the May 2014-December 2020 Period and the 2024-2025 Period.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Esber and in favor of the Pension Fund, pursuant to 29 U.S.C. § 1132(g)(2), for:

(i) all unpaid contributions owed to the Pension Fund for the period of May 1, 2014 to present;

(ii) interest on the unpaid contributions computed and charged at the greater of (a) an interest rate equal to two percent (2%) plus the prime interest rate established by J.P. Morgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, (b) an annualized interest rate of 7.5%;

(iii) statutory damages in an amount equal to the greater of interest on the unpaid contributions or 20% of the unpaid contributions;

(iv) attorney's fees and costs;

(v) audit fees and costs.

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by J.P. Morgan Chase Bank, NA for the fifteenth (15th)

day of the month for which interest is charged, or (ii) an annual interest rate of 7.5%, and with said interest to be compounded annually; and

(c) For such further and different relief as this Court may deem proper and just.

Respectfully submitted,

*<u>/s/ Anthony E. Napoli</u>*
Anthony E. Napoli, ARDC # 6210910
Central States Funds
8647 W. Higgins Road, 8th Floor
Chicago, Illinois 60631
(847) 939-2469
tnapoli@centralstatesfunds.org

October 21, 2026

*ATTORNEY FOR PLAINTIFFS*